LEITCH *vs.* HOLLISTER and others.            [211]

A general assignment by a debtor of his property, in trust for the benefit of a particular class of creditors, reserving the surplus to himself, is fraudulent and void; and it makes no difference whether the surplus be large or small, or whether there be none at all.

And where the assignor is insolvent, the assignment, it seems, will be deemed fraudulent and void, although the trust embraces only *a part* of his property.

Such cases, it seems, are within the statute (2 *R. S.* 135, § 1) declaring all conveyances, transfers, &c. in trust for the use of the person, making the same, to be void as to creditors.

But neither the principle nor the statute applies where the assignment is to *creditors themselves* for the purpose of securing their particular demands. Such a transfer, whatever may be its form, is in legal effect only a mortgage, and creates but a specific lien on the property assigned. The residuary interest of the assignor may be reached by legal process or bill in equity, according to the nature of the interest or of the property.

Accordingly, where an insolvent debtor assigned a chose in action to certain of his creditors for the purpose of securing their demands, reserving the surplus to himself, there being no extrinsic evidence of an intention to defraud other creditors; *held*, that the assignment was valid.

THE complainant filed a creditor's bill before the vice chancellor of the seventh circuit, in March, 1844, against Lyman A. Walker, the judgment debtor, to which the respondents were subsequently made parties, as the assignees of Walker, for the purpose of avoiding an assignment made by him to them, on the ground of fraud. It appeared that Walker was indebted to the respondents, severally, in various sums, in the aggregate amounting to about $3000; that he had commenced a suit against one Merrifield upon a building contract, which had in due course been referred; that while the suit was thus pending Walker executed to the respondents the following assignment:

" Whereas I, Lyman H. Walker, am indebted to Abner Hollister, [&c. the respondents] in sundry sums, as indorsers and otherwise, amounting to $3000 ; and whereas I have a suit in the supreme court which has been referred to Stephen A. Goodwin [&c. naming the referees] which is against Ozem Merrifield of Scipio, of and concerning the building of a house for said Mer-

rifield : Now therefore, in consideration of the above sum, I do [212] hereby assign, transfer and set over to said Hollister [&c. the respondents] any award or report, or judgment that may follow said award or report, together with all the rights that may accrue to me by reason of or under said proceedings in the above suit or reference ; which amount obtained *shall be applied in paying the indebtedness to each of the above assignees,* in equal proportion to the amounts of their respective demands against me, *and the balance to me the said Lyman R. Walker.* Oct. 30, 1843."

The referees subsequently reported $1500 in favor of Walker. The evidence tended to show that Walker was insolvent, but had a considerable amount of property subject to execution at the time of the assignment. All fraud was denied by the answer ; and the only question was, whether the assignment above mentioned, under the circumstances, was upon its face fraudulent and void as to the creditors of the assignor. The vice chancellor made a decree in favor of the complainant in May, 1847, which was reversed by the supreme court in the seventh district, in Sept. 1848. From this decree the complainant appealed to this court.

*S. Stevens,* for appellant. Lyman K. Walker was insolvent when he made the assignment to Hollister and the other respondents, reserving therein a trust for his own benefit, and this renders the assignment fraudulent on its face. (2 *R. S.* 137, § 1 ; *Goodrich* v. *Downs,* 6 *Hill,* 438 ; *Barney* v. *Griffin,* 2 *Comst.* 365 ; *Van Nest* v. *Yeo,* 1 *Sandf. Ch.* 4 ; *Grover* v. *Wakeman,* 11 *Wend.* 187 ; *Storm* v. *Davenport,* 1 *Sandf. Ch.* 135.) In such a case the assignment can not be aided by extrinsic evidence showing that the assigned property would not sell for enough to pay the creditors provided for ; and being void in part the whole is void. The trust for the assignor vitiates the whole assignment. Nor is the case altered by the fact that the assignment was of a specific chattel only. (*Storm* v. *Davenport, sup.*)

*Geo. F. Comstock,* for respondents. I. There is no such thing

as fraud in law as distinguished from fraud in fact, except in [213] the *evidence* of a fraudulent intent. In some cases the law infers an intent to defraud from the language and provisions of the instrument alone. This has sometimes been called fraud in law. (2 *R. S.* 137, § 4; 3 *Paige,* 557; *S. C.* 11 *Wend.* 251; 8 *Cowen,* 406; 4 *Wend.* 303.)

II. Nor can there be any fraud without an intention to defraud. Where the terms and provisions of a written instrument are such as necessarily must operate fraudulently, the law will impute an intention to produce that result. Parties are deemed to intend the necessary consequences of their acts. But a fraudulent intent must always be averred.

III. *General assignments* of a debtor's estate liable to legal process in trust for a portion only of his creditors and reserving the residuary interest to the debtor, necessarily tend to delay and defraud the creditors not provided for. Such instruments, consistently with the principles already stated, are plainly fraudulent. They put the debtor's property beyond the reach of execution, and through the medium of a trust, set it apart for the debtor. (*Barney* v. *Griffin,* 2 *Comst.* 365, *and cases cited; and see the remarks of Bronson, J. at p.* 371, *Goodrich* v. *Downs,* 6 *Hill,* 438.)

IV. But in the present case the thing assigned was not liable to *legal process at all.* It could be reached only in equity, and the residuary interest (if any) of the debtor, can still be reached in equity with the same facility as the thing itself could be, if the assignment had not been made. (4 *John. Ch.* 687, 690.)

V. In this case also, the assignment was only of a *single chose in action,* and covered no part of the debtor's property liable to execution. The fund assigned was by no means adequate to pay the specified creditors, and all the debtor's remaining estate, of which he had a large amount, was left for his other creditors. Such assignments have always been upheld, notwithstanding a hypothetical reservation which has nothing to act upon. (*Beach* v. *Burdett,* 1 *Paige,* 305, 309; *Stevens* v. *Bell,* 6 *Mass. Rep.* 339; *Passmore* v. *Eldridge,* 12 *Serg. & Rawle,* 198; *see also Story, J.* 4 *Mason,* 218.)

VI. The legal effect of the instrument would have been pre-
[214] cisely the same if it had said nothing about the balance
or overplus. The surplus (if any) would have reverted to the
assignor without any express reservation. And if in that case
it would not have been necessarily fraudulent, how can it be so
considered on account of a *mere formula which adds nothing to
the force of the instrument?* (*Story,* J. 4 *Mason,* 222, 223,
224; *Wilkes and Fontaine* v. *Ferris,* 5 *John.* 338.)

VII. If this assignment is necessarily fraudulent, then every
mortgage given to a single creditor, or to less than all the cred-
itors, must be void. They all, like this assignment, contain a
reservation of the surplus. In fact this assignment is in legal
effect neither more nor less than a mortgage upon a chose in
action executed directly to the creditors, and vesting in them
only a *lien.* This therefore is not a case where a trust is created
vesting the whole title in the trustees beyond the reach of cred-
itors not provided for. It is the common case of a mortgage
merely.

GARDINER, J. delivered the opinion of the court.

It has been decided in this state, that a general assignment of
property for the benefit of a particular class of creditors, made
by an insolvent debtor, containing a trust for his own benefit, is
fraudulent and void as against creditors. It is immaterial,
whether the *purpose* to transfer all his property in effect appears
upon the face of the assignment, or is established by extrinsic
evidence; in either case, the whole trust is void. (*Barney* v.
*Griffin,* 2 *Comst.* 370; *Goodrich* v. *Downs,* 6 *Hill,* 438, *and
cases.*

The effect of such an assignment is to withdraw the property
of the debtor from legal process, and to compel creditors to await
the execution of the trust, before they can reach the surplus re-
served to the former. As those creditors who are excluded
from the benefits of the assignment can not enforce its execu-
tion, they are necessarily hindered and delayed, and consequent-
ly in legal contemplation defrauded. It is of no consequence
whether the surplus is large or small, or whether any thing re-

mains after the payment of the preferred creditors. The creation of the trust shows that a surplus was in the contem- [215] plation of the parties, and its reservation for the benefit of the assignor is a fraud upon creditors, which is consummated the moment the deed containing the provision is executed and delivered.

The assignment may be avoided by any creditor, whether provided for or not, who has not voluntarily become a party to the trust, or by his own act ratified and confirmed it. (*Hone* v. *Henriquez*, 13 *Wend.* 243.) It must, when executed, bind all or none of the creditors of the assignor. Otherwise the condition of one, for whom a provision was made, by a fraudulent trust without his agency, would be worse than if he had been excluded altogether.

These principles, for aught I can perceive, apply to every case of an express trust created by an insolvent for the benefit of a *part* of his creditors, whether the trust included the whole or a part only of his property. Insolvency implies that all the assets of the insolvent, if honestly appropriated, will be insufficient to pay his debts.

If part of the fund is assigned for the benefit of preferred creditors, and a trust as to the surplus after their payment, created for the use of the assignor, it is obvious that the creditors who are excluded, some or all of them, must be delayed and injured : as the whole fund would be insufficient for the payment of all the claims upon it, the dividend of those excluded from the assignment must be diminished by just the amount of the surplus secured to the debtor. In the mean time, the whole interest in the property from which it is to be raised, vests in the trustees, and is withdrawn from the reach of process, and the creditors thereby delayed, until the winding up of the trust. Cases of this kind, it seems to me, are within the spirit as they certainly are within the letter of the statute, which declares " that all conveyances, transfers or assignments of goods or things in action made in trust for the use of the person making the same, shall be void against creditors, existing or subsequent." (2 *R. S.* 135, § 1.)

Neither the principle to which I have adverted, nor the statute, applies to assignments made in good faith, of a *part* of a [216] debtor's property to creditors *themselves*, for the purpose of securing particular demands. The conveyance, whatever may be its form, is in effect a mortgage of the property transferred. A trust as to the surplus results from the nature of the security, and is not the object, or one of the objects, of the assignment. Whether expressed in the instrument, or left to implication, is immaterial. The assignee does not acquire the entire legal and equitable interest in the property conveyed, subject to the trust, but a specific lien upon it. The residuary interest of the assignor may, according to its nature, or that of the property, be reached by execution or by bill in equity. The creditor attaches that interest as the property of the debtor, and is not obliged to postpone action until the determination of any trust. He is, therefore, neither delayed, hindered or defrauded in any legal sense.

In the case before us, the property assigned to the respondents was a chose in action. The complainant acquired a lien upon the interest of the assignor the moment his bill was filed. He was then at liberty to redeem, or require a sale of the judgment, subject to the rights of the respondents, or compel an application of the surplus upon his own debt, when the judgment was collected. He has, therefore, not been hindered, or sustained any other injury, than that he has been postponed to other creditors equally meritorious with himself.

The decree of the supreme court should be affirmed.

Decree affirmed.