M. AMANDA SWIFT AND WILLIAM R. GELLING, AS ADMINISTRATORS, ETC., OF JOHN H. SWIFT, DECEASED, AND OTHERS, RESPONDENTS, v. EDWARD C. HART AND EDWARD C. STEBBINS, AS ASSIGNEES OF CHARLES H. SCHAD, APPELLANTS.

*Fraudulent conveyance — a grantee who participates in the fraudulent intent will not be protected even to the extent of the amount actually due to him from the grantor — any liens he had upon the property transferred, prior to its transfer, will be restored on its vacation — after a general assignment has been made the assignee may bring suit to vacate conveyances as fraudulent — 1858, chap. 314. — when creditors may.*

In this action, brought by judgment creditors of one Schad to set aside as fraudulent an assignment of certain judgments made by Schad to his attorney, the defendant Hart, it appeared that the assignment was made on January 5, 1883. It recited that Schad was indebted to Hart to the amount of $200 for legal services, and that he was desirous of retaining him in proceedings and litigations that might arise in relation to a general assignment of Schad for the benefit of creditors, and provided that the judgments should be taken as a payment in full of all services, and any surplus that might be collected beyond the value of such services was to be held by Hart as collateral to notes of Schad which he had indorsed. The judgments were of the nominal value of $1,800, and of the actual value of $800. On January eighth Schad made a general assignment containing preferences.

*Held,* that in so far as the transfer to Hart was intended to operate as a payment for services to be subsequently rendered, it was fraudulent as to the other creditors of Schad and void.

That, although if Hart had acted in good faith the assignment would have been sustained for an amount equal to the sum then due for services previously rendered, yet as it was found that he took the transfer with an actual intent to defraud the creditors of the assignor, it was wholly void.

The judgments transferred had been recovered by Hart, as attorney for Schad, and he had, at the time of the transfer, liens thereon for his compensation and disbursements therein.

*Held,* that upon setting aside the transfer as fraudulent he should be allowed to retain from the moneys collected upon the judgments the amount of the liens he had previously held thereon. (RUMSEY,. J., dissenting.)

Since the passage of chapter 814 of 1858, extending the powers of assignees for the benefit of creditors, the right of action to set aside a fraudulent conveyance of the debtor's property, made before the execution of the assignment, is vested in the assignee alone. (RUMSEY, J., dissenting.)

*Leonard* v. *Clinton* (36 Hun, 288) overruled.

If the assignee refuses to bring such an action a judgment creditor may bring it and make the assignee a party defendant; in which case the fund recovered will be directed to be paid to the assignee, to be distributed as prescribed in the assignment, even though the latter contain preferences. (RUMSEY, J., dissenting.)

APPEAL from a judgment, entered on the report of a referee.

On the 5th day of January, 1883, the defendant Schad made a written transfer to defendant Hart of several judgments, amounting to about $1,800, and of the value of about $800, in which it was recited that Schad was indebted to him in the sum of $200 for legal services, and was desirous of retaining him in proceedings and litigations that might arise in matters relating to a general assignment of Schad for the benefit of creditors; and Hart desiring the present payment therefor, and consenting to take those judgments as payment in full for such services .and retainer, such transfer was made. It contained the provision that if there should remain any surplus of the proceeds of the judgments after so paying him, the residue should be held by Hart as collateral to notes held by him on which Schad was indorser. On the next day Schad made transfers and conveyances of property to other parties, and Monday, the eighth of January, he made a general assignment, containing preferences, for the benefit of his creditors, to the defendant Stebbins.

The plaintiffs are judgment-creditors of Schad, and brought this action to set aside that transfer to Hart as fraudulent as to the creditors of Schad, and recovered judgment to that effect. This appeal is taken from that judgment.

*W. L. Marcy*, for the appellant Hart.

*Ellsworth & Potter*, for the appellant Stebbins.

*David Millar*, for the respondents.

BRADLEY, J.:

The referee found that the assignment of the judgment to Hart was made and taken with the intent to defraud the creditors of Schad.

The defendant Hart is a lawyer and was his attorney and legal adviser. At the time the transfer was made to Hart, Schad was largely indebted, and it was then understood that he might deem it necessary to make a general assignment although the latter had not then definitely determined to do so. The next day he sold and conveyed property to some other parties, and Hart assisted him by drawing the requisite papers, etc., and on Sunday night, the seventh January, prepared his general assignment, which was executed Monday morning. The defendant Hart had the right without being subject to imputation of any unlawful purpose to obtain payment or security for his claim against Schad, and for that purpose to seek priority over other creditors, and he would not be prejudiced by any fraudulent purpose which Schad may have had so long as the object of Hart was to get such payment or security. The right of the latter to give and of Hart to obtain preference cannot be questioned. (*Dudley* v. *Danforth*, 61 N. Y., 626; *Beards* v. *Wheeler*, 76 id., 213; *Auburn Ex. Bank* v. *Fitch*, 48 Barb., 344; *Hale* v. *Stewart*, 7 Hun, 591; *Horton* v. *Fancher*, 14 id., 172; *Jewett* v. *Noteware*, 30 id., 192; *Billings* v. *Billings*, 31 id., 65; *Giddings* v. *Sears*, 115 Mass., 505; Wait on Fraudulent Con., etc., § 390.) But Hart sought to do more than to secure payment of the debt due him, and included payment or security for services which he might perform after the general assignment should be made by his debtor. This was practically a provision for the benefit of the latter. It was a reservation of property to pay for professional aid which he might thereafter require, and to that extent was in fraud of his creditors who have the right to insist that their insolvent debtor's estate shall be appropriated to the payment of his existing debts. (*Elias* v. *Farley*, 2 Abb. Ct. App. Dec., 11; S. C., 3 Keyes, 398; *Mead* v. *Phillips*, 1 Sandf. Chy., 83; *Planck* v.

*Schermerhorn,* 3 Barb. Chy., 644; *Leitch* v. *Hollister,* 4 N. Y., 211, 214; *Curtis* v. *Leavitt,* 15 N. Y., 132.) The defendant Hart sought to treat the claim for services thereafter to be rendered, as an existing liability of Schad arising out of the contract of employment to the effect that the latter retained him as his attorney and counsel, and Hart consented to assume that relation for a consideration to be advanced, that the payment was for his agreement to perform rather than for services to be performed.

It is difficult to permit such distinction to the prejudice of the creditors of an insolvent debtor, or to treat it other than a purpose to withhold from them a portion of the estate of their debtor to pay the expense of future litigation which he possibly might have, and that is the fair purport of the instrument. (*Nichols* v. *McEwen,* 17 N. Y., 22, 24.) It is contended on the part of Hart that the provision may be deemed analogous to security for future advances, and supported. The difficulty is that it was made by an insolvent debtor and in view of a general assignment, and provided for an appropriation of a portion of his estate for future application in his behalf, and cannot be brought within the rule which gives effect and validity to security for future advances. (*Truscott* v. *King,* 6 N. Y., 147.) And the instrument cannot be supported as security for the existing debt and liabilities of Schad if the defendant Hart was chargeable with actual intent to defraud the creditors of Schad, but is wholly void in that event. (*Davis* v. *Leopold,* 87 N. Y., 620.) The referee has found that Hart took the transfer with actual intent to defraud the creditors of his assignor. The evidence presented a question of fact in that respect and seems to be sufficient to support that conclusion of the referee.

The defendant Hart, as attorney for Schad, recovered the judgments so assigned by the latter to him, and had liens upon them respectively for his compensation and disbursements therein (Code Civil Pro., § 66), with the right to retain sufficient of the money collected on them to satisfy it. (*Marshall* v. *Meech,* 51 N. Y., 140; *Bowling Green S. Bank* v. *Todd,* 52 id., 489; *In re Knapp,* 85 id., 284.) But ordinarily and presumptively the attorney's lien for compensation in actions is confined to those respectively in which the services are rendered, and is not general so as to charge the fund

recovered in one action for charges in another or others. ( *Williams* v. *Ingersoll*, 89 N. Y., 509, 517.)

The question as to the extent or amount of the lien of the defendant Hart on the judgments so recovered by him, does not necessarily arise here, as that is independent of the assignment to him in question. The referee determined that Hart had no lien upon those judgments for his compensation in the actions in which they were recovered, and directed that he should pay over to the receiver the entire amount received by him on them. This conclusion was probably put on the ground that the lien was extinguished by the transaction of the transfer to him of the judgments, and not restored by the adjudged invalidity of that instrument. This view of the referee is not supported. As a rule, the taking of security for the payment of a claim discharges its lien, which is deemed merged in the securing agreement, but when the latter is judicially declared invalid the lien is usually revived. (*Patterson* v. *Birdsall*, 64 N. Y., 294; affirming 6 Hun, 632.) And there is no reason for application of a different rule where fraud, as to creditors, defeats its operation and renders it void as against them. (*Malloney* v. *Horan*, 49 N. Y., 111, 121.) Although the assignment to Hart was valid as between the parties to it, and he could not treat it otherwise while it remained operative, the plaintiffs in proceeding to determination that it was void as to creditors, cannot assert that a valid lien which was merged in and apparently discharged by it is also destroyed. (*Robinson* v. *Bates*, 3 Metc., 40, 43.) The practical effect of the adjudication is that, as to the creditors of Schad no title to the judgments passed by his assignment to Hart, and as a consequence the pre-existing legal rights of the latter were not affected by it. If this view is correct, it follows that his lien, as attorney, remains effectual to protect his compensation in the actions in which the judgments were recovered, to the extent that it existed prior to the transfer in question.

The remaining question has relation to the right of the plaintiffs to maintain the action and to the disposition of the proceeds of the judgments. The assignment made by Schad to the defendant Hart was valid as between the parties to it; and if Stebbins had no right or power other than that given by the voluntary assignment of his assignor, he could not maintain an action to set aside transfers made

by him in fraud of his creditors. The remedy in such case would be wholly with the creditors of the assignor. (*Brownell* v. *Curtis*, 10 Paige, 210, 219; *Leach* v. *Kelsey*, 7 Barb., 466.) But by Laws of 1858 (chap. 314), the right to bring such action was given to the assignee for the benefit of the creditors of his assignor, to reach property transferred by the latter in fraud of creditors.

It is contended by the respondents' counsel that the power thus given to the assignee does not take away from the creditors the right to maintain an action for that purpose, for the exclusive benefit of those creditors who seek remedy by suit. The effect of the act of 1858 was to make the assignee the representative or trustee of the creditors of his assignor, in respect to all the rights of property which could be deemed held in trust in behalf of those creditors, by reason of any previous fraudulent transfer by the assignor. And if it operated to vest in him title, as assets for distribution under the assignment, to all claims and interests in property held by others in fraud of creditors of his assignor, and by reason of such fraud in trust for them, with the right to proceed by action in equity to reclaim it from the fraudulent transferee, it would seem to follow that the creditors of the assignor could not respectively, and in disregard of the right and duty of the assignee to make such distribution, obtain by action and appropriate the proceeds of such property to the payment of their judgments. The question, therefore, is whether such rights in respect to property so fraudulently transferred, passed to the assignee Stebbins with the right to receive and distribute the proceeds or avails of it.

The act of 1858 is comprehensive in its effect, and gives to the assignee the character of trustee in respect to the rights, which the creditors would otherwise have, to reach and take property of which the assignor was apparently, but as against creditors not, divested, and held in trust for them by reason of the fraudulent transaction from which the color of title was derived. The assignee is more than the voluntary assignee of the insolvent debtor. He is, by force of the statute a trustee for the creditors to the extent of the power conferred, as effectually as if his appointment had been made by or pursuant to law vesting in him title for the purposes of the trust. (*Southard* v. *Benner*, 72 N. Y., 424; *Glenny* v. *Langdon*, 98 U. S., 20.) The right of the assignee in such case must be

founded in the fact, that by force of the statute the assignment operates to vest in the assignee as such trustee the exclusive right to reach the property of the assignor covered by his fraudulent transfer, and to appropriate its proceeds for the benefit of the creditors. And to accomplish that purpose it was only necessary to give the assignee the right of action to do so. It follows that the remedy of the individual creditors in that respect is taken away from them and devolved upon their trustee, and that their rights are subject to the direction for distribution given by the assignment. (*Childs* v. *Kendall*, 30 Hun, 227 ; *Lowery* v. *Clinton*, 32 id., 267 ; *Spring* v. *Short*, 90 N. Y., 538 ; *Crouse* v. *Frothingham*, 20 N. Y. Weekly Dig., 22, reversing 27 Hun, 123 ; *Bate* v. *Graham*, 11 N. Y., 237 ; *Babcock* v. *Booth*, 2 Hill, 181, 185.) This view is in conflict with that of the court in *Leonard* v. *Clinton* (26 Hun, 288), and in accord with the conclusion in that respect in *Lowery* v. *Clinton* (*supra*).

The refusal of the assignee to bring action in such case does not divest him of the right of property as trustee, nor afford the right to individual creditors to appropriate as the result of their action the proceeds to the payment of their judgments. The assignee cannot, as against the creditors entitled to share in distribution under the assignment, waive any substantial rights which they may have in respect to the property of the assignor. (*Bate* v. *Graham*, 11 N. Y., 237 ; *Crouse* v. *Frothingham*, 20 N. Y. Weekly Dig., 22.) The property so fraudulently assigned remains in equity as to creditors the property of the assignor (*Moncure* v. *Hanson*, 15 Penn. St., 385) and the assignee who represents the creditors is not permitted to defeat their right to treat it as part of the assets.

And on his refusal to proceed by action to reclaim the property the creditors, or any of them, may institute action in equity for that purpose making the assignee a party defendant. And the proceeds of the recovery are assets for distribution pursuant to the direction of the assignment. (*Bate* v. *Graham*, *supra* ; *Everingham* v. *Vanderbilt*, 51 How., 177 ; affirmed 12 Hun, 75 ; *Davenport* v. *Dows*, 18 Wall., 627 ; *Dewey* v. *Moyer*, 72 N. Y., 70.) The liability in such case is to the assignee, and the right of recovery is in him only, but on his refusal to seek the remedy the creditor has the right to accomplish the purpose by bringing him into court,

which will by judgment give the requisite direction in the event of recovery to place the proceeds where they belong, with a view to the ultimate rights of the creditors. The recovery is practically in behalf of the assignee as trustee for them, and to dispose of the fruits of it pursuant to the power given by the assignment. The action in its nature and effect is one to compel the execution of the trust.

The fact that the assignee refused to bring the action does not necessarily charge him with bad faith. He was at liberty to exercise fairly his judgment, and it seems he did in his declination to sue, and acted in good faith and without collusion with anybody. The judgment may be modified so as to conform to the views before given. The plaintiffs are not entitled to have it adjudged that the proceeds of the judgments in question be paid by the receiver to them or applied on their judgment.

The judgment appealed from should be so modified as to adjudge that whatever lien the defendant Hart had on the judgments mentioned in the alleged transfer to him, before and at the time it was made, and the amount with which they respectively were and remain so charged, may be ascertained by a reference; that he pay over to the receiver the money collected or received by him, if any, less the amount thereof which he is entitled to retain to satisfy and discharge such lien or liens; that after paying his legal fees and expenses, the receiver, with the residue of the proceeds of those judgments pay, first, to the plaintiffs or their attorney the amount of their taxable costs in this action, and such additional allowance of costs, if any, as has been or may be granted them by the court; second, to the defendant Stebbins or his attorneys, if sufficient thereof remain, his taxable costs of this appeal; third, to the defendant Hart or his attorney, if sufficient thereof remain, his taxable costs of this appeal; and, fourth, the residue, if any, to the defendant Stebbins as assignee.

The portions of the judgment not consistent with the above, are reversed, and the judgment as modified affirmed, without costs to either party as against any other of them, otherwise than as before mentioned.

BARKER and HAIGHT, JJ., concurred.

RUMSEY, J.:

I regret that I cannot concur with the majority of the court either in the result they have reached or in the reasons given, but I will state briefly the points of my dissent and the reasons for it.

_First._ I do not think the appellant Hart should be permitted to retain his lien as attorney on the judgments which were transferred to him in fraud of creditors. The referee has found that Hart knew of the fraudulent design of his assignor; that he connived at it and assisted Schad in carrying it out, and that the assignment to him was part of the general scheme of Schad to defraud his creditors. In short he finds that Hart was an active party to the fraud of the debtor Schad.

Before this fraudulent transfer was made to him, Hart had a lien as attorney on some of the judgments assigned. He took the assignment in payment of the sums secured by this lien and for other considerations; that is, as to the amounts of the liens he had good consideration for the judgments. The transfer of the title to the judgments gave him the sole ownership of them, and of course while that ownership existed put an end to his lien both because the complete legal title, vested in him, operated to merge his lien (3 Pars. Cont., 245), and because the debt which his lien secured was paid by the transfer of the judgments to him in payment. He stands in the position of a man who having a valid lien upon property to secure a debt has given up the lien and taken the property in payment of the debt with the express intent of cheating the other creditors of his debtor. I think the rule is well settled that when the grantee is a party to the fraud of his grantor the transfer will not be permitted to stand as security for any purpose of indemnity or reimbursement. (_Davis_ v. _Leopold_, 87 N. Y. 620; _Miller_ v. _Tollison_, 14 Am. Dec., 712.) The reason is that the law will never assist a man out of any position in which he has put himself for the purpose of defrauding others, but will leave him just where he has placed himself. He has voluntarily surrendered his lien for dishonest purposes, and he cannot when he is detected in his attempt to cheat, ask to be relieved from the consequences at the expense of the creditors whom he unsuccessfully tried to defraud. But it is said that though in strict law this lien was lost, yet equity will protect it. It is quite true that equity, for equitable purposes

and for the benefit of a person who is entitled to its protection will not permit a merger of the less estate with the greater, although the two have united in the same person. But the reason of this rule precludes its application to this case. It exists for the benefit of persons who are entitled to be relieved in equity from the operation of a strict rule of law. It does this to insure justice. If the party claiming it has no standing in a court of equity he cannot have this relief, and if to prevent the merger would carry a fraud into effect, or is not necessary to work substantial justice, the court will permit the merger to take place. (2 Pom. Eq. Juris , § 794) The same reason which refuses to a grantee payment of money he has actually advanced, should operate, I think, to refuse to reinstate a lien which he has surrendered. The case of *Malloney* v. *Horan* (49 N. Y., 111) is not in point, because there was no finding in that case that the plaintiff, who sought to retain her dower right, was a party to the fraud of the grantor. The effect of the modified judgment is not only to reinstate Hart in the position which he abandoned in his unsuccessful attempt to cheat the creditors of Schad, but to compel those creditors to pay the costs which he has incurred in that attempt. I do not think there is any rule or precedent for equity to aid a fraudulent grantee to that, or any extent, and for that reason I think that as to Hart the judgment should be affirmed, with costs.

I dissent also from the holding of the majority of the court, that by force of chapter 314 of the Laws of 1858, the right of action of individual creditors to attack a fraudulent transfer of property, is taken away after the debtor has made a general assignment for the benefit of his creditors. It is well settled that a transfer of property by a debtor in fraud of creditors, is good between the parties and vests in the assignee all the title of the assignor. (*Henriques* v. *Hone*, 2 Edw. Ch., 120; affirmed 13 Wend., 240; *Rankin* v. *Arndt*, 44 Barb., 251, 256.) There is left to the debtor nothing which he can assign or transfer to any one. By the act of the debtor the assignee for the benefit of creditors could get no interest in the property transferred to Hart. This much is conceded. But it is said that the statute is comprehensive enough to vest in assignees for creditors the sole right to attack transfers made by their assignors in fraud of creditors, and to take such right from the

individual creditors. Such are not the words of the statute. As was said in *Leonard* v. *Clinton* (26 Hun, 288), "it gives a right but takes away none." And, as is pointed out in that case, it is right there that the statute differs from the statute construed by DENIO, J., in *Bate* v. *Graham* (11 N. Y., 237). After the property has been transferred in fraud of creditors, the title, as is conceded, is in the grantee. All that creditors have is a right of action to attack the fraudulent transfer. They have no equitable estate nor any other estate. At the most they have an equitable lien. All that the assignee has in that regard he gets by the statute. That gives him the right for the benefit of creditors to avoid a fraudulent transfer. It is no estate, but only a right of action, and it is nothing else.

The statute has all its effect if it has that interpretation. There is nothing inconsistent with the statute in leaving a right of action in the creditors. If the assignee ought to be made a party that can always be done. If he is not, there is nothing in the fact of a general assignment which prevents the creditor from maintaining his action. The relief to be granted and the parties to the action are all within the control of the court, and no harm can come from sustaining the right of action in the creditors; while as appears from this very case great injustice may result from refusing the right. The Commission of Appeals has held that the fact that the judgment debtor has made a general assignment for the benefit of creditors, after the fraudulent transfer, is no defense to an action by a creditor to reach the property fraudulently assigned. (*Fort Stanwix Bank* v. *Leggett*, 51 N. Y., 552.) That case could not have been decided as it was if the plaintiff had no cause of action. So in *Dewey* v. *Moyer* (72 N. Y., 79) EARL, J., says that if it had been pleaded that there was an assignment in bankruptcy the *plaintiffs could have shown that they represented all the debts which the bankrupt owed*, in which case these creditors could maintain the action. But no matter what they represented if the assignee only could bring the action. So the case of *Leonard* v. *Clinton* (*supra*) is precisely in point upon the question here presented. That case was stated in *Childs* v. *Kendall* (30 Hun, 227) to have been overruled by *Spring* v. *Short* (90 N. Y., 538). But that is a mistake. *Spring* v. *Short* did not turn on the statute of 1858 which was not mentioned in it and was not the basis of the decision. In that case

the plaintiff sought to set aside a mortgage made by his debtor. It appeared, first, that the mortgage was valid; second, that the debtor had conveyed the land covered by the mortgage to an assignee for the benefit of creditors who of course took the title to the mortgaged property whether the mortgage was valid or not. The Court of Appeals and the General Term held, what was the law before the statute, that the assignment being valid, the mortgaged property belonged to the assignee although the mortgage should be set aside, and therefore the judgment creditor had no standing in court to set aside a lien upon property which could not, under any circumstances, be reached by his judgment.

But there is nothing in that case which did or could overrule *Leonard* v. *Clinton*, nor is there laid down any rule inconsistent with it. The subsequent case of *Lowery* v. *Clinton* (32 Hun, 267) treats the case in 26 Hun as overruled, and for that reason does not follow it. I think, however, that it is the law, especially as it ·is fortified by the case cited from the Commission of Appeals.

I think, too, that the judgment entered on the report of the referee was right in directing that the judgment of the plaintiffs should be paid out of the fund, and I do not think the proceeds of this suit should go to the assignee to be distributed under the assignment. If it goes to the assignee I have no doubt that he must distribute it under the directions of his trust. But I think it ought not to go to him at all.

It is quite clear that whatever the assignee gets from his assignor, this property did not pass to him. There was no intention that it should, but, on the contrary, so far as the assignor was concerned, he did all that he could to keep the property out of the hands of the assignee and not to subject it to the assignment. His intention was that the assignment should operate only on the property actually turned over to the assignee. As to that he proposed that it should be distributed to the preferred creditors. The property assigned to Hart, the debtor proposed to keep himself. The assignee was not his trustee as to that, by his·own act, at least. We cannot presume any intention on the part of the assignor to subject that property to the trusts he had created, because he limits the trust to the property assigned and because he did his best to keep it himself. We are not required, therefore, to give this prop-

erty to the preferred creditors by way of carrying out the intention of the assignor, for he had no such intention. If it goes to the assignee, it must be either because he alone has the right to it or because the policy of the law puts it there. But I think I have shown that the creditors as well as he have a right of action to pursue this property. The assignee has not therefore the sole right to it. Neither do I think the policy of the law is subserved by paying it over to him to be distributed under this assignment. The assignment is one with preferences. Such an assignment is lawful, but it is viewed with distrust. It is a source of fraud and neither the right to prefer nor the preference itself is to be extended. (*Grover* v. *Wakeman*, 11 Wend., 187.) Where the property of an insolvent is to be distributed the maxim of the law is first that "equality is equity," and that, so far as it can control, debts will be paid equally and *pro rata*. It is desirable that, so far as may be, all shall share alike. If this fund is turned over to the assignee, none will share in it until the preferred creditors have been paid in full. This is contrary to the rule of law, and as we have seen it is not required by the intention of the assignor. There is no reason then why this fund should go to swell the dividend of the preferred creditors, to the exclusion of the creditor who has brought it into the fund. But there is a rule of law which is applicable to such cases, and which, I think, will operate to give the plaintiffs the benefit of the fund. It is that the law favors the vigilant creditor. The plaintiffs have brought this fund into being. They have discovered it and made it available. But for them it would still be in the hands of the parties to the fraud. The preferred creditors have no claim on it, because it was never intended that they should have it. In no event can it go to the creditors who are not parties to this action and are not preferred. It would seem to be just that in this case as in others the plaintiffs should have the benefit of their own vigilance. No rule of law is broken by giving it to them. No case is cited which requires it to go to the assignee. It is said, indeed, that he is the trustee for the creditors, but, as I have shown, if he can be said to be such it is only as to the property embraced in his deed and not as to other property not intended to be included in it. And as to that property while he is nominally the trustee for all the creditors, he is actually a

trustee to carry into effect an unfair and unequal distribution of the fund which is permitted by the law under protest and not encouraged nor extended. For these reasons it seems to me that the plaintiffs ought to have the benefit of this fund and that the judgment should be affirmed, with costs.

Judgment modified as indicated in the opinion*, and as modified affirmed. Judgment to be settled by BRADLEY, J.