# MERILLAT v. HENSEY.

---

INSOLVENCY; PREFERENCES; FRAUDULENT CONVEYANCES; PRESUMPTIONS OF
                           FRAUD; EQUITY.

1. A failing debtor has the right to prefer one of his creditors over others.
2. While the taking by creditors from their insolvent debtor of an absolute
   assignment of his cause of action in a pending suit, accompanied by
   a secret agreement that, out of the proceeds of any judgment recov-
   ered, their claims and expenses shall first be satisfied, and the balance,
   if any remaining, paid to him, constitutes a badge of fraud and is
   presumptively fraudulent, such presumption is rebuttable; and the
   question of whether there is intent to defraud under such circum-
   stannces is, under D. C. Code, sec. 1120 (31 Stat. at L. 1368, chap.
   854), a question of fact, and not of law.

3. Where bona fide creditors take from their insolvent debtor an assignment of his cause of action in a pending suit, and file the same, and at the same time enter into an agreement, not known to his other creditors, whereby they are to receive payment of their claims out of the proceeds of any judgment recovered, the balance, if any, to be paid to him; and they prosecute the suit and recover a judgment, the proceeds of which are insufficient to pay their claims in full; and no actual fraud towards the other creditors appears to have been perpetrated, and it does not appear that they were deceived by the transaction,—the assignment will not be set aside in equity as fraudulent, at the instance of such other creditors.

No. 1879. Submitted October 10, 1908. Decided November 4, 1908.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to set aside an alleged fraudulent assignment. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This cause originated in a bill filed by appellants, Charles H. Merillat and Mason N. Richardson, trustees, as complainants below, against Melville D. Hensey, Mercantile Trust Company, Frederick A. Mertens, and Park Agnew, appellees here, to avoid an assignment by Hensey to Mertens and Agnew, on the ground that said assignment was made with intent to hinder, delay, and defraud other creditors.

The bill alleged that complainants as trustees on May 21, 1906, obtained a judgment against said Hensey for more than $67,000; that on June 12, 1905, said Hensey, in a suit at law in which he was plaintiff, obtained a judgment against said Mercantile Trust Company in the sum of $8,468 with costs; "That being the owner of said judgment against the said Mercantile Trust Company, Corporation, the said defendant Melville D. Hensey, who then and long prior thereto had been indebted to your complainants and other persons, and who was also then insolvent, in fraud of the rights of your complainants and of his creditors, and for the purpose of hin-

dering, delaying, and defrauding them and defeating the just claims of his creditors, and without consideration, in whole or in part, as your complainants are informed and believe, and so believing aver, assigned all his right, title, and interest in said judgment as of record to the defendants the said Frederick A. Mertens and the said Park Agnew; and said assignment of record was made on or about the 3d day of March, 1903. Your complainants are informed and believe, and so believing aver, that if either said Mertens or Agnew, or both of them, had any claim against the said Melville D. Hensey, the true and exact amount of the indebtedness justly due by said Melville D. Hensey to them, or either of them, was and is far below the amount of said judgment, and that said entire judgment was conveyed or assigned by said Melville D. Hensey to them upon a secret agreement and arrangement that they shall refund or repay to him the amount thereof in excess of the claim of them or either of them against him."

The bill required the defendants Mertens and Agnew to answer under oath and disclose the amount paid, if any, upon the assignment of said judgment to them, and the arrangement or agreement between them in respect of the repayment to said Hensey of the balance or amount over and above their claim, if any. Interrogatories were submitted to each defendant, and all save Hensey were required to answer under oath.

Hensey in his answer admitted the judgment against the trust company; averred he had no interest in it; that on the 21st of October, 1903, he assigned it to Mertens and Agnew. He denied that the assignment was made to hinder, delay, or defraud creditors, and averred that it was made in good faith and to secure an indebtedness of $7,300 to Mertens and Agnew, and a loan by them of $250.

The joint answer of Mertens and Agnew admitted the assignment by Hensey to them; denied fraud; and averred the amount due them, including costs and counsel fees, was in excess of the judgment assigned them. Their answer admitted that, concurrently with the assignment, an agreement was entered into between them and Hensey which provided that, from

the proceeds of any judgment that might be recovered, costs and attorneys' fees should first be paid, secondly, their claim, and any balance to Hensey; that the amount of the judgment was not sufficient to pay costs, attorneys' fees, and their claim.

The facts, as developed by the proof, are these:

On July 23, 1901, Hensey, through Birney & Woodward as his attorneys, filed a suit in the supreme court of the District of Columbia against the Mercantile Trust Company on a bond given by said company to said Hensey for $50,000. Hensey was then in failing circumstances, as evidenced by the fact that between April 23, 1900, and June 11, 1901, four judgments for $250.74, $600, $700, and $400, respectively, were rendered against him, which at the time of the bringing of the suit against the trust company were outstanding and unpaid, and, so far as the record discloses, are still outstanding and unpaid. Other liabilities were also then outstanding.

Mertens testified that the firm of Mertens & Agnew in 1899 sold one Kellogg brick, the payment for which was guaranteed by Hensey; that it was then understood that cash would be paid, but that when Hensey was unable to pay cash the firm accepted his notes, no account being kept of the transaction, as a settlement would be made every week or two by the surrender to Hensey of brickyard delivery slips in exchange for his notes. These notes were renewed from time to time, and were still outstanding and aggregated over $7,300 when Hensey assigned his suit against the trust company.

Mertens further testified that, at the time of the assignment of this suit against the trust company, Hensey did not have anything, and could not have stood the costs of suit. Mertens was asked to produce the books of the firm of Mertens & Agnew for the years 1899 and 1900, but declined to do so on the ground that they contained no account with Kellogg and Hensey.

Agnew testified that he was present when the assignment was made, and that there was discussion about Hensey's affairs. He was asked, "Did it concern his debts?" and answered, "I suppose that is about the only thing it concerned, but I could not swear to that." He further testified to having read a newspaper article

published July 20, 1903, containing an account of the suit against Hensey which culminated in said judgment for $67,000.

A præcipe was offered in evidence dated February 15, 1902, and directing the clerk of the supreme court of the District to enter the cause of *Hensey* v. *Trust Company to the use of Mertens and Agnew.* This was filed in the supreme court of the District on October 20, 1903. There was also put in evidence the assignment of said suit by Hensey to Mertens and Agnew as follows:

In the Supreme Court of the District of Columbia.
  At Law.   No. 44,822.
  Melville D. Hensey, Plaintiff,
    v.
  Mercantile Trust Company, Defendant.

For value received, I hereby sell, assign, transfer and set over to Frederick Mertens and Park Agnew my cause of action in the above-entitled suit, and all the proceeds which may be derived from the prosecution thereof and from any judgment which may be obtained. I further authorize and empower the said assignees to continue the prosecution of said cause in my name, to which end I constitute them my lawful attorneys in fact.

In witness whereof I have hereunto set my hand, this 21st day of October, 1903.

          Melville D. Hensey.


Concurrently with this assignment the following agreement was entered into:

This agreement entered into this 21st day of October, 1903, between Frederick Mertens and Park Agnew, parties of the first part, and Melville D. Hensey, party of the second part:

Whereas the party of the second part has this day executed an assignment of his cause of action against the Mercantile Trust Company, at Law No. 44,822, in the supreme court of the District of Columbia:

Now, therefore, it is agreed and understood between the par-

ties that from the proceeds of any judgment that may be recovered against the Mercantile Trust Company in said suit, or any other suit involving the same issues, that there shall first be paid costs and attorneys' fees, secondly the claim of Mertens and Agnew against Melville D. Hensey, and any balance then remaining over to the said Hensey.

Witness the signatures and seals of the parties, this 21st day of October, 1903.

Frederick Mertens.
Park Agnew.
Melville D. Hensey.

The assignment was filed with the clerk of the supreme court of the District, but the agreement was retained by Birney & Woodward.

A verdict was obtained on February 1, 1904, in this suit against the trust company for $18,250. This was set aside and a new trial had, which resulted in a verdict and judgment in the sum of $8,468. Immediately upon the affirmance of said judgment by the Supreme Court of the United States, appellants filed their bill herein. The court below, after final hearing on bill, answer, pleadings, and testimony, dismissed the cause, with costs in favor of defendants. This appeal ensued.

*Mr. Charles H. Merillat* and *Mr. Mason N. Richardson,* for the appellants.

1. The Federal rule and that of most of the States is that, while a debtor may honestly prefer a special creditor, the reservation of a secret benefit to the debtor is a fraud which vitiates the entire arrangement, and that once the secret benefit is made to appear the fraudulent intention is conclusive in law. *Lukens* v. *Aird,* 6 Wall. 79; *Means* v. *Dowd,* 128 U. S. 282; *Dent* v. *Ferguson,* 132 U. S. 67; *Huntley* v. *Kingman,* 152 U. S.; *Crawford* v. *Neal,* 144 U. S.; *Bamberger* v. *Schoolfield,* 160 U. S. 150; *Robertshaw Mfg. Co.* 133 Fed.; *Greenleve et al.* v. *Blum,* 59 Tex. 126; *Rice* v. *Cunningham,* 116 Mass. 469; *Campbell* v.

*Davis,* 85 Ala. 56; *Dean* v. *Skinner,* 42 Iowa, 418; *Connelly* v. *Walker,* 45 Pa. 454; *Neubert* v. *Maesman,* 37 Fla. 97; *Moore* v. *Wood,* 100 Ill. 451; *Beidler* v. *Crane,* 135 Ill. 98; *Jones* v. *Gott,* 10 Ind. 242; *Clark* v. *French,* 23 Me. 228; *Sidensparker* v. *Doe,* 52 Me. 481–90; *Malcolm* v. *Hodges,* 8 Md. 418; *Whedbee* v. *Stewart,* 40 Md. 420; *Franklin* v. *Claflin,* 49 Md. 24; *Smith* v. *Conkwright,* 28 Minn. 23; *Molaska Co.* v. *Steele,* 36 Mo. App. 496; *Wooten* v. *Clark,* 23 Miss. 77; *Walpole Platen Co.* v. *Law,* 10 U. S. App. 704; *Coolidge* v. *Melvin,* 42 N. H. 510; *Winkley* v. *Hill,* 9 N. H. 31; *Scott* v. *Hartman,* 26 N. J. Eq. 89–92; *Moode* v. *Williamson,* 44 N. J. Eq. 496–505; *Newell* v. *Wagner,* 1 N. D. 69; *Mendenhall* v. *Elwert,* 36 Or. 375; *Bentz* v. *Rockey,* 69 Pa. 71–77; *Edwards* v. *Dickson,* 66 Tex. 614; *Humphries* v. *Freeman,* 22 Tex. 45; *Young* v. *Heermans,* 66 N. Y. 382. The text books are to the same effect. See Bump, Fraud. Con. sec. 201; Wait, Fraud. Con. sec. 272; 14 Am. & Eng. Enc. Law, 2d ed. p. 248; 20 Cyc. Law & Proc. pp. 463, 464; 1 Story, Eq. Jur. sec. 361, 362; Kerr, Fraud and Mistake, 206, 207. The fact that in the result it turns out there would be no surplus for the insolvent has no bearing or importance in the matter. The law has reference to the intent. *Billings* v. *Russell,* 101 N. Y. 231; *Main* v. *Lynch,* 54 Md. 659; Bump, Fraud. Con. sec. 201; also *Curtis* v. *Leavitt,* 15 N. Y. 9.

2. New York State has a statute identical with Sec. 1120, Code, D. C. proviso, and construing it, the highest courts of that State have held that every party must be deemed to have intended the natural inevitable consequences of his acts, and where his acts are voluntary and necessarily operate to defraud others, he must be deemed to have intended the fraud. *Coleman* v. *Burr,* 93 N. Y. 17; *Edgell* v. *Hart,* 9 N. Y. 13. See also *Thompson* v. *Crane,* 73 Fed. 327–29; *Crawford* v. *Neal,* 144 U. S. 585; *Franklin* v. *Claflin,* 49 Md. 24; *Farrow* v. *Hayes,* 51 Md. 505; *Main* v. *Lynch,* 54 Md. 672–671; *Hathaway* v. *Brown,* 18 Minn. 414; *Smith* v. *Conkwright,* 28 Minn. 23; *Jones* v. *Gott,* 10 Ind. 243; *Pennington* v. *Clifton,* 11 Ind. 162; *Palmour* v. *Johnson,* 84 Ga. 99; *Howe Mach. Co.* v. *Claybourne,* 6 Fed. 438; *Foster* v. *Grigsby,* 1 Bush, 95.

When sec. 1120 made intent a question of fact, and not of law, it did not do away with those presumptions which, while rebuttable as presumptions of fact, yet nevertheless require proof to overcome them. Neither did it eliminate the doctrine that parties shall be held to intend the natural and probable consequences of their acts. And in the case at bar, as stated, not a word of explanation for the secret, and, if no fraud on creditors had been intended, unnecessary agreement signed by all three parties is vouchsafed. *Moore* v. *Wood,* 100 Ill. 455. Where the question is, was there a secret trust, it is a question of fact, but when the fact of a secret trust is admitted or established, the fraud is an inference of law. See also *Muchmore* v. *Bald,* 53 N. J. L. In the following cases in addition to those heretofore cited, secret trusts have been denounced, and it has been held that, while a creditor may seek to have his own claim preferred, he must do no more than by fair methods to obtain payment of his own claim, and that if he go further, and secure a benefit to the failing debtor, this will taint the whole transaction: *Crawford* v. *Kirksey,* 55 Ala. 282; *Seaman* v. *Nolan,* 68 Ala. 466; *Story* v. *Agnew,* 2 Ill. App. 358; *Sidensparker* v. *Doe,* 52 Me. 481–90. See also 20 Cyc. Law & Proc. p. 463; 20 Am. & Eng. Enc. Law, p. 463; *Quimby* v. *Morrill,* 47 Me. 470; *Dillon* v. *Anderson,* 43 N. Y. 231; *Merriam* v. *Pine City L. Co.* 32 Minn. 314; *Juniata Bldg. Assn.* v. *Hetzel,* 103 Pa. 507; *McKinnon* v. *Gates,* 102 Mich. 618; *Logan* v. *Logan,* 22 Fla. 561; *Dodd* v. *Gaines,* 82 Tex. 429; *Blubaugh* v. *Loomis,* 48 W. Va. 666; *Cincin. Tob. Co.* v. *Malthews,* 74 S. W. 242; *Klein* v. *Hoffheimer,* 132 U. S. 367; *Clark* v. *French,* 23 Me. 228; *Jones* v. *Light,* 86 Me. 441; *Jones* v. *King,* 86 Ill. 225; *Hook* v. *Mowre,* 17 Iowa, 198; *Dart* v. *Stewart,* 17 Ind. 222; *Suffing* v. *Tilton,* 12 Ind. 259; *Page* v. *Grant,* 9 Or. 121; *Day* v. *Cooley,* 118 Mass. 527. The law presumes every man to intend the necessary consequences of his acts. *Zimmer* v. *Muller,* 64 Md. 296–300; *Whedbee* v. *Stewart,* 40 Md. 420; *Garden* v. *Lewis,* 7 Gill, 379; *Molaska Mfg. Co.* v. *Steele,* 36 Mo. App. 496; *Cook* v. *Johnson,* 12 N. J. Eq. 51–3; *Agnews* v. *United States,* 165 U. S. 36; *Beidler* v. *Crane,* 135 Ill. 98; District of Columbia

Code; *Green* v. *Tatum,* 19 N. J. Eq.; *Ins. Co.* v. *Sears,* 109 Mass. 383; *Hitt* v. *Ormsbee,* 14 Ill. 236; *Savings Bank* v. *McLean,* 84 Mich. 628; *Edmiston* v. *Lyde,* 1 Paige, 637; *Hitt* v. *Ormsbee,* 14 Ill. 236; Bump, Fraud. Conv., pp. 239, 240.

*Mr. A. A. Birney* and *Mr. Henry F. Woodard* for the appellees.

Mr. Justice ·Robb delivered the opinion of the Court:

We have examined the record with care, and are convinced that Hensey, at the time he made the assignment in question, was indebted to Mertens and Agnew as they contend. While their transactions with him, and the methods of bookkeeping employed, were a little unusual, we are not prepared, in the absence of proof, to question their testimony. They appear to be reputable business men, and, aside from the careless manner in which they dealt with Hensey, there is no reason to question the bona fides of their claim against him.

A bona fide debt existing, Hensey had a perfect right to prefer Mertens and Agnew over other creditors, provided the preference was not given with intent to hinder, delay, or defraud other creditors.

Unquestionably the taking of this absolute assignment by Mertens and Agnew from their insolvent debtor Hensey, and entering into what must be considered as a secret arrangement to pay him any overplus, constitutes a badge of fraud. Under the Code (sec. 1120, [31 Stat. at L. 1368, chap. 854]), intent to defraud is made a question of fact, and not of law. We are, therefore, of the opinion that while the transaction on its face is presumptively fraudulent, yet, nevertheless, that presumption is rebuttable; that is, susceptible of explanation. If, then, from all the facts and circumstances surrounding the case we find the acts of the parties to be consistent with an honest purpose, and that other creditors were not in fact prejudiced, we are not required to avoid the assignment.

Mr. Justice Brown, in *Huntley* v. *Kingman & Co.* 152 U.

S. 532, 38 L. ed. 542, 14 Sup. Ct. Rep. 688, said: "The tendency of courts in modern times has been not to hold instrumentsof this character to be fraudulent and void upon their face, unless they contain provisions plainly inconsistent with an honest purpose, or the instrument indicates with reasonable certainty that it was executed not to secure bona fide creditors, but to enable the debtor to continue to carry on his business under cover of another's name."

In the instant case the favored creditors did not in fact obtain enough from the suit assigned them to liquidate their claim against the debtor. The claim was worth no more when it was assigned than when they recovered final judgment thereon. It was a suit on an indemnity bond, and although it had then been in court two years, no progress appears to have been made in its prosecution. The debtor had no funds to prosecute it, and no steps were taken by creditors, including appellants, to reach the debtor's interest therein; neither were any steps taken to assist in its prosecution. The appellees were not, therefore, taking an assignment of a chose in action of fixed and certain value, but were buying a lawsuit, with the costs and expenses incident thereto. We think there can be no doubt that had they given Hensey no defeasance agreement, the transaction would have been a perfectly legitimate one. In other words, had they, in consideration of the extinguishment of their claim against Hensey, taken the assignment in question, other creditors could not have complained, even though the assignees ultimately recovered more than their claim, for the obvious reason that the consideration for the assignment in the circumstances of the case would not have been so inadequate as to have avoided the transaction. That the actual value of the thing assigned was not greater than Hensey's indebtedness to the assignees is clear in the light of the fact that the judgment ultimately obtained was not sufficient to liquidate that indebtedness. In the circumstances of this case it seems to us inequitable and illogical to set aside this assignment because of the agreement as to overplus, when but for that agreement the transaction would not have been open to question. It must have appeared to Mertens and Agnew at

the time the assignment was taken, as testified to by their coun-
sel, Mr. Woodard, that it was extremely doubtful whether
there would be any overplus. It must have appeared equally
as doubtful to other creditors, because no questions were asked
either Mertens or Agnew concerning the transaction. Had any
creditor solicited information on the subject, and received an
evasive and misleading reply, this case would be on an alto-
gether different basis. That they did not do so indicates a
willingness on their part to refrain from action until these dili-
gent creditors had prosecuted the claim assigned them to a suc-
cessful issue.

For two years prior to the assignment of this suit against the
trust company there was nothing to prevent creditors from insti-
tuting bankruptcy proceedings against this debtor, and prose-
cuting the suit for the benefit of all creditors. Their failure to
do so has a distinct bearing, in our view, on the question as to
what was the then understood value of that suit. It will not
do to say the suit had been commenced, and that it was not
encumbent upon them to act until its termination, because the
record shows that the debtor was unable to prosecute the suit,
and that but for the diligence of appellees it might have gone by
default.

In this case the debtor parted absolutely with dominion and
control over the thing assigned. Hensey's interest was com-
pletely extinguished except in the very uncertain event of an
overplus,—an event probably not expected by anyone. It seems,
therefore, that this agreement as to overplus in the circumstan-
ces of this case was a mere incident to, and not in any sense the
reason for, the assignment. Under the authority of *Leitch* v.
*Hollister,* 4 N. Y. 211, the reasoning of which was adopted by
the Supreme Court in *Huntley* v. *Kingman & Co.* 152 U. S.
532, 38 L. ed. 542, 14 Sup. Ct. Rep. 688, this overplus agree-
ment would not have been deemed fraudulent had it been made
public. The case then narrows itself down to the question
whether the mere fact that this agreement was not made public
avoids the assignment. It must be borne in mind that we are
not dealing with a mortgage, which must be recorded; neither

are we dealing with a case where the slightest misrepresenta-
tions, aside from that imputable to the instrument itself, have
been made. Counsel might have entertained an honest doubt
as to whether or not they could absolutely control the prosecu-
tion of the suit assigned unless it appeared that their assignment
was absolute. Entertaining that view, there was no place where
the defeasance agreement could have been recorded, and we are
unable to discover wherein the other creditors were in the slight-
est degree prejudiced because of the failure on the part of the
assignees to publish the fact of this defeasance agreement.

In *Muchmore* v. *Rudd,* 53 N. J. L. 369, 22 Atl. 518, this
question was carefully and exhaustively treated. There a verbal
agreement as to overplus accompanied the bill of sale of the
insolvent debtor to a third person for the benefit of preferred
creditors. The court treated the transfer as a mortgage, and,
after reviewing the authorities, held that, inasmuch as the thing
assigned was of less value than the debts secured, nothing was
fraudulently put beyond the reach of creditors. There was a
dissenting opinion in the case, but it was put upon other grounds,
the writer of the opinion regarding the question as to the reser-
vation of the surplus as "one of very minor importance" in that
case.

In the present case the thing assigned was of uncertain value,
and its subsequently ascertained value proved to be less than the
debt preferred. The preferred creditors were compelled to ex-
pend a very substantial sum of money and considerable time and
effort in recovering on the suit assigned them. Because it is
now discovered that when they took the assignment they were
not actuated by a desire to retain out of the proceeds thereof
more than their claim and actual expenses, we are asked to hold
that they perpetrated a fraud upon other creditors, and this,
notwithstanding that it must then have been clear to them that
a surplus was a very remote contingency.

An honest debt existing, all fraud being denied, no actual
fraud or deceit being shown, and the value of the thing as-
signed being less than the debt, we do not believe equity re-

quires us to deprive these diligent creditors of the fruit of their efforts.

The decree below will be affirmed, with costs. *Affirmed.*

An appeal by the appellant to the Supreme Court of the United States was allowed November 13, 1908.